IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES INC., dba, INTERMOUNTAIN MEDICAL CENTER,<br><br>Plaintiff,<br>v.<br><br>LINE CONSTRUCTION (LINECO) BENEFIT FUND, THE LINECO BENEFIT PLAN, and THE BOARD OF TRUSTEES OF THE LINECO BENEFIT FUND,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:14-CV-4 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants Line Construction Benefit Fund (the "Fund"),  the Lineco Benefit Plan (the "Plan"), and the Board of Trustees of the Lineco Benefit Fund's (the "Board of Trustees") (collectively, "Lineco")[1] Motion for Summary Judgment as well as Plaintiff Intermountain Medical Center's ("IHC") Motion for Summary Judgment.  For the reasons discussed more fully below, the Court grants Defendants' Motion and denies Plaintiff's Motion.

I.  BACKGROUND

IHC is the assignee of its patient, Matthew Erkelens, who is an employee of Trees Inc. and a participant in the Plan, a health and welfare plan provided by his employer.  The Plan

---

[1] These are three separate, yet related entities.  The Fund is a Taft-Hartley multi-employer benefit fund.  The Plan controls the distribution of the Fund's assets to eligible beneficiaries, and the Board of Trustees administers the Fund and determines eligibility for benefits under the Plan. Plaintiff's main dispute is with the decision of the Board of Trustees to deny Mr. Erkelens's claim for benefits.  However, for convenience throughout this order, the entities are collectively referred to as "Lineco."

1

provides benefits for over 38,000 participants through the contributions of over 400 employers.[2] Unlike a traditional insurer that requires premium payments, the entire cost to cover Plan participants is funded by employer contributions determined by individual collective bargaining agreements.[3] The Plan includes medical and dental benefits, short-term disability benefits, life insurance, and accidental death or dismemberment benefits.[4] The Plan, as a self-funded multi-employer health and welfare plan, is subject to the Employee Retirement Income Securities Act ("ERISA").

On Saturday, September 24, 2011, Mr. Erkelens was severely injured when he accidently caught his leg in a stump grinder he was operating. He had been hired by a Mr. Slane to remove a stump from his yard. Mr. Erkelens and his friend, Mr. Bleckert, were working in Mr. Slane's yard at the time of the accident. Mr. Slane had been referred to Mr. Erkelens by the company that cut down his trees. Mr. Slane agreed to pay Mr. Erkelens $100 for the removal of the stump. However, due to the accident, Mr. Slane never made any payment to Mr. Erkelens or Mr. Bleckert.[5] IHC treated Mr. Erkelens's injuries from September 24, 2011, through September 29, 2011, and again June 7, 2012, through June 8, 2012. IHC billed Lineco for this treatment which totaled $144,703.36. Lineco denied payment.[6] Lineco contends that Mr. Erkelens's injury falls under the following exclusion described in the Plan document:

> No payment shall be made under this Plan in any event with respect to the charges listed below . . . . 1. Charges incurred as the result of any accidental bodily injury, sickness or disease sustained while the individual was performing any act of employment or doing anything <u>pertaining to any employment</u> or employment

---

[2] Docket No. 24, at 6.

[3] *Id.*

[4] Docket No. 24-3, at 7–9.

[5] Docket No. 24-10, at 1.

[6] Docket No. 25, at 7.

for remuneration or profit. 2. Charges incurred as the result of accidental or bodily injury, sickness or disease for which benefits are or may be payable in whole or in part under any Workers' Compensation Law . . . .[7]

## II. LEGAL STANDARD

A party is entitled to summary judgment if all the pleadings and materials in the record show "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."[8] The facts are undisputed and therefore this issue is ripe for summary judgment.

A denial of benefits under an ERISA plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[9] If a plan gives the administrator such discretionary authority to determine eligibility for benefits or to construe its terms, then courts "employ a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious."[10]

Lineco's plan document states:

Benefits under this Plan will be paid only when the Board of Trustees or persons delegated by them to make such decisions decide, in their sole discretion, that the participant or beneficiary is entitled to benefits under the terms of the Plan . . . . The decision of the Trustees or their delegates shall be binding upon all persons dealing with the Plan or the Fund or claiming any benefit thereunder, except to the extent that such a decision may be determined to be arbitrary or capricious by a court having jurisdiction over the matter.[11]

---

[7] Docket No. 24-3, at 46 (second emphasis omitted).

[8] Fed. R. Civ. P. 56(a).

[9] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

[10] *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011) (quoting *Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (internal quotation marks omitted)).

[11] Docket No. 24-3, at 27.

The broad discretion under the Plan granted to the Board of Trustees and its delegates entitles its decisions to a deferential standard of review. The amount of deference under the arbitrary and capricious standard may be decreased if a court determines that the Plan has a conflict of interest with its beneficiaries. "When there exists such a conflict of interest, we undertake a 'sliding scale' analysis, where the degree of deference accorded the Plan Administrator is inversely related to the 'seriousness of the conflict.'"[12]

In evaluating potential conflicts of interest, the Supreme Court made it clear that "the employer has an interest conflicting with that of the beneficiaries" when "it is the employer that both funds the plan and evaluates the claims."[13] The Tenth Circuit has found "an inherent conflict of interest between its discretion in paying claims and its need to stay financially sound."[14] Non-exhaustive factors to consider in determining the extent of any such conflict of interest includes: whether "(1) the plan is self-funded; (2) the company funding the plan appointed and compensated the plan administrator; (3) the plan administrator's performance reviews or level of compensation were linked to denial of benefits; and (4) the provision of benefits had a significant economic impact on the company administering the plan."[15]

The first factor cuts slightly against Lineco, but the other factors favor Lineco. First, Lineco's plan is a multi-employer plan funded by hundreds of employers rather than just one. Nonetheless, because this plan is self-funded, as Lineco's costs rise, contributions would need to rise proportionally from participating employers to keep the fund solvent. Therefore, it would be

---

[12] *Allison v. Unum Life Ins. Co. of Am.*, 381 F.3d 1015, 1021 (10th Cir. 2004) (quoting *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 825 (10th Cir. 1996)).

[13] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008).

[14] *Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1296 n.4 (10th Cir. 2000).

[15] *Id.* at 1296.

in the interest of Lineco and its many employers to keep the costs of administering the Fund down.  The fact that many employers share this risk greatly reduces, but does not eliminate entirely, Lineco's inherent conflict of interest.  Second, the contributing companies do not appoint and compensate the Fund administration.  The appointed members of the Board of Trustees are comprised of half union employees and half management employees from participating companies.[16]  Third, these Trustees receive no additional compensation for serving on the Board and therefore have no monetary interest linked to a denial of benefits.  Finally, because the Fund had $757,821,948 in assets available to pay claims last fiscal year, paying Mr. Erkelens's claim would have no appreciable economic impact on the Fund, nor any individual contributing employer.[17]

    IHC cites *Fought v. Unum Life Insurance*[18] for the proposition that Lineco should bear the burden of proving that its decision was reasonable.  Typically, a Plaintiff bears the burden of proof in a civil case.  This burden-shifting standard articulated in *Fought* was abrogated by the Supreme Court's decision in *Metro Life v. Glenn*.[19]  "*Glenn* expressly rejects and therefore abrogates this [burden shifting] approach."[20]  Therefore, the Court finds that the burden remains with Plaintiff to prove that Defendants' actions were arbitrary and capricious.

### III.  DISCUSSION

    The Court will review Lineco's denial of Mr. Erkelens's medical claim under the arbitrary and capricious standard of review with slightly less deference than if Lineco were

---

[16] Docket No. 28, at 13.

[17] *Id.* at 14.

[18] 379 F.3d 997, 1006 (10th Cir. 2004).

[19] 554 U.S. 105.

[20] *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009).

completely free of conflicts of interest. "Under this arbitrary-and-capricious standard, our review is limited to determining whether the interpretation of the plan was reasonable and made in good faith."[21]

> In applying the arbitrary and capricious standard, the decision will be upheld so long as it is predicated on a reasoned basis. In fact, there is no requirement that the basis relied upon be the only logical one or even the superlative one. Accordingly, [the Court's] review inquires whether the administrator's decision resides somewhere on a continuum of reasonableness—even if on the low end.
> A lack of substantial evidence often indicates an arbitrary and capricious decision. Substantial evidence is of the sort that a reasonable mind could accept as sufficient to support a conclusion. Substantial evidence means more than a scintilla, of course, yet less than a preponderance. The substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole.[22]

A. RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (a)(1)(B)

It is undisputed that Mr. Erkelens was covered under a medical policy through Lineco at the time of the accident. The parties dispute whether an exclusion in the policy applies to Mr. Erkelens's situation. As mentioned above, this exclusion states:

> No payment shall be made under this Plan in any event with respect to the charges listed below . . . . 1. Charges incurred as the result of any accidental bodily injury, sickness or disease sustained while the individual was performing any act of employment or doing anything <u>pertaining to any employment</u> or employment for remuneration or profit. 2. Charges incurred as the result of accidental or bodily injury, sickness or disease for which benefits are or may be payable in whole or in part under any Workers' Compensation Law . . . .[23]

Lineco asserts that Mr. Erkelens's claim is barred by this exclusion. Initially, Mr. Erkelens's claim was denied because Lineco thought that it was covered by Workers'

---

[21] *Eugene S.*, 663 F.3d at 1130 (citation and internal quotation marks omitted).

[22] *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006) (citations and internal quotation marks omitted).

[23] Docket No. 24-3, at 46 (second emphasis omitted).

Compensation.[24] Once it was clarified that it was not covered by Workers' Compensation, it was denied as an injury sustained during an activity engaged in for remuneration or profit.[25] When the Board of Trustees became aware that Mr. Erkelens had received no compensation for removing the stump for Mr. Slane, it nevertheless again denied the claim because it found the claim still related to an injury sustained "while an individual is doing anything for remuneration and profit" and "[w]hether or not Mr. Erkelens actually received the $100 or whether the $100 constituted a reasonable compensation for his services, the information available supports a finding that Mr. Erkelens' injury was work-related, according to the Committee. Consequently, the Committee concluded that the appeal must again be denied."[26]

The only question is whether, based on the evidence in the record at the time of the denial of the appeal, the Board's decision was arbitrary and capricious. The Court finds that it was not. IHC argues that Mr. Erkelens was merely helping a neighbor grind out a tree stump in his yard on a Saturday, and whether he was paid by the neighbor does not make the activity one "pertaining to employment" as stated in the exclusion. Lineco argues that Mr. Erkelens agreed to take the side job grinding out a stump for remuneration and so it does not matter whether he was actually paid or not. Because he undertook the job with the expectation of payment, it was therefore "pertaining to employment for remuneration or profit."

The Court need not determine whose interpretation of the incident is correct, only if Lineco's decision to deny benefits was arbitrary and capricious. After the incident, Lineco sent Mr. Erkelens a questionnaire asking "Was this injury/condition due to any employment including

---

[24] Joint Administrative Record, at 2.

[25] *Id.* at 94.

[26] *Id.*

7

side jobs?" Mr. Erkelens checked "yes."[27] In a later letter to Lineco, Mr. Erkelens stated again that his injury was incurred "while performing a side job . . . [and that] [s]ide jobs are done with the intent of payment, however, I never made any money for this particular job."[28] An email from IHC's attorney to Lineco's attorney stated that Mr. Slane had "no affiliation with Matt Erkelens prior to 9/24/11" and that Mr. Slane was "referred to [Mr. Erkelens] for stump grinding by the company that cut down his trees."[29] Furthermore, according to the attorney's email, Mr. Erkelens took a "partner" with him that day to Mr. Slane's home. This partner did not go with Mr. Erkelens to the hospital, but "stayed behind to gather up the equipment."[30]

Even assuming that Lineco has some conflict of interest, and affording Lineco's decision less deference on that basis, the Court finds that this documentation is substantial evidence to support Lineco's finding that Mr. Erlekens's injury was sustained while doing an activity pertaining to employment for profit or remuneration. The Court finds that Lineco's decision was reasonable and made in good faith. Therefore, Lineco's denial based on the above-mentioned policy exclusion was not arbitrary and capricious.

B.  BREACH OF FIDUCIARY DUTY UNDER 29 U.S.C. §§ 1104, 1109, AND 1132(a)(2)–(3)

In the alternative, IHC seeks recovery of benefits for Mr. Erkelens arguing a breach of fiduciary duty by the Plan. IHC argues that Lineco breached its fiduciary duty to Mr. Erkelens by interpreting "employment" in a way that excludes coverage for his claim. IHC points out that Mr. Erkelens's claim was first denied because Lineco thought that he was paid for removing the stump for Mr. Slane, but then once it became clear that he was never paid, Lineco still denied his

---

[27] *Id.* at 229.

[28] *Id.* at 30.

[29] *Id.* at 88.

[30] *Id.*

claim because he expected to be paid for removing the stump. IHC argues that Lineco changed its definition of employment to continue to deny Mr. Erkelens's claim, and thus breached its fiduciary duty to Mr. Erkelens as a participant and beneficiary.

The Court has determined that Lineco's interpretation of its exclusion pertaining to employment undertaken for profit or remuneration was not arbitrary and capricious. However, even if the Court had found that it was, IHC could not recover under ERISA for breach of fiduciary duty since it does not allege any harm to the Plan, only to Mr. Erkelens as a beneficiary. In *Massachusetts Mutual Life v, Russell*,[31] the Supreme Court made clear that Section 409 of ERISA "primarily concerned [] the possible misuse of plan assets[,]" therefore available remedies "protect the entire plan, rather than [] the rights of an individual beneficiary."[32] Thus, "the entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself."[33] IHC does not seek relief for the Plan, but only for Mr. Erkelens, therefore this claim fails.

C. FAILURE TO PRODUCE PLAN DOCUMENTS UNDER 29 U.S.C. §§ 1024(b)(4) AND 1132(c)(1)

Under ERISA, "upon written request[,]" the Plan Administrator must provide "any plan participant or beneficiary" with a copy of the "latest updated summary, plan description . . . or other instruments under which the plan is established or operated."[34] If a plan does not comply "within 30 days after such request[,]" the administrator may be "personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or

---

[31] 473 U.S. 134 (1985).

[32] *Id.* at 142.

[33] *Id.* at 144.

[34] 29 U.S.C. § 1024(b)(4).

refusal."[35]  IHC argues that Mr. Erkelens requested qualifying plan documents on September 17, 2012, January 3, 2013, March 20, 2013, and August 7, 2013, but did not receive them until September 11, 2013.[36]  However, Mr. Erkelens did not make these requests to Lineco, but to Regence Blue Cross.  Lineco has a preferred provider arrangement with Blue Cross/Blue Shield of Illinois, but has not conferred any authority upon Blue Cross/Blue Shield to act on its behalf.  Lineco's Board of Trustees is its plan's administrator, and therefore Lineco cannot be liable under 29 U.S.C. § 1132(c)(1) if the request was made to another entity.  Nothing in the Complaint or Record shows that Mr. Erkelens requested documents from Lineco's Board of Trustees.  Therefore, this claim also fails.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant Lineco's Motion for Summary Judgment (Docket No. 24) is GRANTED.  It is also

ORDERED that Plaintiff IHC's Motion for Summary Judgment (Docket No. 25) is DENIED.

The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff, and close this case forthwith.

DATED November 4th, 2015.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[35] 29 U.S.C. § 1132(c)(1) (Under 29 C.F.R. § 2575.502c-3, the penalty has been increased to $110 per day.).

[36] Docket No. 25, at 23.